UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PATRICK SALYER                                                                                           PLAINTIFF

v.                                                                                     CIVIL ACTION NO. 3:05CV364-S

CSX TRANSPORTATION, INC.                                                                          DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on motion of the defendant, CSX Transportation, Inc.("CSXT"), for summary judgment in this action brought under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The plaintiff, Patrick Salyer, was employed by CSXT as a conductor/brakeman. On October 1, 2004, he was working the third shift beginning at approximately 10:30 or 11:00 pm at the Osborn Yard in Louisville, Kentucky. Salyer described the incident in which he was injured that night as follows:

> Well, I dismounted the locomotive and took just a few steps. I don't know, maybe three or four. And I was walking, and my foot kind of slid on the loose ballast. And felt my foot roll and I caught myself from falling, but – and I did hear my knee pop. And tried to –you know, kind of walked it off because, you know, I'd done that before where I could probably walk it off and be fine. But, yeah, then I went to throw the switch and that was it...[L]ike I said, the main thing is the footing. And when I – like I stepped – I stepped on the – my foot kind of rolled. The ballast wasn't steady or secure.

Salyer depo., p. 90.

CSXT does not dispute that this was a single, one-time traumatic injury which occurred on October 4, 2004 while Salyer was performing his regular job duties for CSX which included walking on ballast rock. *See,* CSXT Reply, p. 1. The sole argument offered by CSXT is that Salyer's expert medical testimony does not link the plaintiff's injury to any negligence of CSXT. More particularly, CSXT urges that each of Salyer's allegations of negligence relates in some way to the presence of "oversize ballast" in the walkway[1], but Salyer's expert fails to state that Salyer's injury was related to this oversize ballast. *See*, CSXT Reply, pp. 2-3. For the reasons set forth below, we find that this argument is not well taken.

The parties cite to *Mayhew v. Bell Steamship Company*, 917 F.2d 961 (6th Cir. 1990) which discusses the framework of FELA[2]:

> FELA "provides for liability when an injury results in whole or in part from the negligence of the employer." *Id. at* 1204 (citations omitted). "[T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for

---

[1] The presence of mainline (oversize) ballast in this area is apparently not disputed.

[2] The application of the Jones Act follows the judicially developed doctrine of liability granted to railroad workers by FELA. *Mayhew,* at 962.

> which damages are sought." *Id. citing Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)...[I]t is the jury's function to "determine all factual issues where the jury can *reasonably draw* the particular inference or conclusion submitted to it." *Foltz v. Burlington Northern R. Co.*, 689 S.W.2d 710 (Mo.App. 1985), (emphasis added), *citing Sentilles v. Inter-Caribbean Shipping Corp.*, 361 U.S. 107, 110, 80 S.Ct. 173, 175, 4 L.Ed.2d 142 (1959)... "[A]lthough a [FELA or Jones Act] plaintiff need not make a showing that the employer's negligence was the *sole* cause, there must be a sufficient showing (i.e., *more than a possibility*) that *a* causal relation existed."

*Mayhew*, 917 F.2d at 962-63. The Supreme Court made clear in *Sentilles, supra.*, that "[t]he matter does not turn on the use of a particular form of words by the physicians in giving their testimony. The members of the jury, not the medical witnesses, were sworn to make a legal determination of the question of causation." 80 S.Ct. at 175.

> Salyer's treating physician, Dr. Kittie George, gave the following testimony:
>
> Q: Doctor, during the course of your care and treatment, did you formulate a diagnosis or diagnoses of the conditions which you treated Mr. Salyer for?
>
> A: I did.
>
> Q: And what were those?
>
> A: An ACL disruption or tear. The second would be a medial meniscus tear. And the third would be lateral meniscus tear.
>
> Q: And do you have an opinion, Doctor, as to whether or not those diagnoses are causally related to the incident of October 1st, 2004, which was related to you in history by Mr. Salyer?
>
> A: It is my opinion that it was related to that particular injury...
>
> Q: ...Is it my understanding your opinions related to the cause of Mr. Salyer's knee injury was that he suffered this knee injury on a – as a result of a onetime incident in October of 2004?
>
> A: That's my opinion.
>
> Q: He was walking, he slipped, he twisted his knee, and that's what caused it, correct?
>
> A: That's my opinion, yes...I think his statement of a twisting, his presentation of a swollen knee, a knee that is lacking range of motion, I think is consistent with an acute ACL and meniscus pathology.

George depo., pp. 30-31, 34-35.  Dr. George also testified that with either sports injuries in activities of daily living, "where they're walking, they happen to step off a step, step on uneven ground and they shift," and an MCL or ACL tear results from the twisting of the knee.  It was her understanding that Salyer was walking on uneven ground in the railroad yard when the incident causing his injury occurred.  George depo., pp. 7-9.

>Salyer's engineering expert, Raymond A. Duffany, testified that
>
>>I said that they were negligent because they didn't maintain a safe walkway.  And there are pieces of ballast in there that I consider main line ballast and only main line ballast...And what I will say is, it is relatively level across there.  But if you look at an individual square of ballast where you do have some main line ballast, it does stick up quite a bit from the overall surface.

Duffany depo., pp. 14, 17.

There is sufficiently clear testimony from Dr. George, Mr. Duffany and Salyer himself upon which a reasonable jury could conclude that the cause of Salyer's ACL and MCL tears was the twisting of his knee when he slipped on unstable and uneven ballast in the walkway on October 1, 2004.  Dr. George testified as to the mechanics of a twisting ACL/MCL tearing injury, relating that in a non-sports context to stepping on uneven ground and then experiencing a shifting and a twisting of the knee.  Salyer testified that, indeed, this is what occurred.  He stepped on ballast which shifted and caused him to slip, to catch himself, and to experience a twisting and popping of his knee resulting in the tears in question.  Salyer testified about the instability of his footing on the large ballast.  Duffany testified that it was negligent for CSXT to fail to maintain its walkways in a safe condition.  He testified that the combination of the larger main line ballast with walkway ballast created a dangerous condition for employees such as Salyer.  A reasonable jury could conclude on this evidence that Salyer's injury was caused by CSXT's negligence.  It is not necessary, as CSXT suggests, that Dr. George identify main line ballast as the precise material comprising the uneven surface which caused Salyer's foot to roll and his knee to twist.  The law requires only that the evidence be such that a jury could reasonably draw the particular inference or conclusion.  *Mayhew,*

*supra*. Therefore, the motion of CSXT for summary judgment will be denied. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**